CASE 69.—ACTION BY ERNEST JORDAN BY NEXT FRIEND &c., AGAINST THE W. M. RITTER ·LUMBER COM-PANY.—May 31, 1910.

## Ritter Lumber Co. v. Jordan.

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Master and Servant—Injuries to Servant—Negligence—Failure to Warn—Question for Jury.—Where a lad 14 years and 10 months of age was employed in defendant's planing mill to operate a planer, and, without being instructed as to the danger, was injured by his foot coming in contact with unguarded knives under the table of the machine, while he was undertaking to ·get out strips that had broken · and hung in the machine, in the same manner as he had seen other employes do, whether defendant was negligent in failing to warn him was for the jury.

2. Master and Servant—Injuries to Servant—DangerousMachinery—Question for Jury.—In an action for injuries to a servant by getting his foot cut in the knives of the planer which were unguarded below the table. whether the machine was palpably dangerous, or whether it was not practicable to guard it with a hood, held for the jury.

3. Trial—Instructions—Construction as a Whole.—The court charged that, if plaintiff's foot was caught in the machine and cut by reason of defendant's negligence, the jury should find for him compensation for the injury. The two following instructions defined "negligence" as previously used, and by the fourth the jury were told that they could not find for plaintiff if he was negligent, although defendant was negligent, as set out in the two preceding instructions. Held, that the first instruction, considered in connection with the others, was not objectionable as authorizing a finding for plaintiff for any negligence other than that alleged.

4.  Trial—Request to Charge—Instructions Given.—It is not error to refuse a requested charge covered by the instructions given.

5.  Damages—Personal Injuries—Excessive Verdict.—Plaintiff, a lad 14 years and 10 months of age, was injured; his foot being caught in the revolving knives, cutting off the fleshy part of the bottom of his foot. He suffered pain for a considerable time from the wound, and at the time of the trial the foot had no spring in it, and he could only walk on his heel. Held, that a verdict for $5,000, after a second trial, was not so excessive as to require reversal.

E. L. GREEN, A. E. AUXIER, ROSCOE VANOVER and GREEN & GILLESPIE for appellant.

J. SMITH HAYS and E. D. STEPHENSON for appellee.

Opinion of the Court by Judge Hobson—Affirming.

The W. M. Ritter Lumber Company operates a planing mill in Pike county. Ernest Jordan on December 2, 1907, had his foot caught in one of the machines. He had been employed by the company for some months in taking away the shavings from the machines, and in bearing off the timber after it passed through them; but for about a month he had been operating this machine. He was 14 years and 10 months old at the time of his injury on December 2, 1907. He brought this suit to recover relying on two grounds: First, that he was an infant, inexperienced, ignorant of the danger, and was not instructed or warned as to it when put in charge of the machine; second, that the planer was palpably dangerous, and was not properly guarded where practicable, in violation of section 331a, subsec. 12, Ky. St., which requires, among other things, that all such machinery "which is palpably dangerous where practicable shall be properly guarded." Issue was joined

upon the allegations of the petition, and a trial was had which resulted in a verdict for the plaintiff in the sum of $6,000. The court granted a new trial, and at a subsequent term of the court the case was tried again, resulting in a verdict for $5,000. The court entered judgment on the verdict, refusing the defendant a new trial, and it appeals.

The facts as to the plaintiff's injury are, in substance, these: He had been put in charge of the machine and directed to run some strips through it, five-eighths of an inch wide and three-eighths of an inch thick. The strips were planed down until they were very thin, when they came out of the machine, and for this reason frequently broke in passing through. One of the strips having broken in this manner, and hung in the machine, the boy left the front of the machine where he stood to feed the strips in, and went around to the rear of it for the purpose of getting the broken strip out. At the rear of the machine the shavings were piled up around the machine a foot or 18 inches deep. He raised the pressure bar that held the strip in place and undertook then to pull the broken strip out of the machine. In his effort to pull the strip out, he put his foot against the frame of the machine, and, when he pulled in this way, his foot slipped from the frame, and passing underneath was caught by the revolving knives. The fleshy part of the bottom of the foot was cut off. He suffered long and painfully from the wound, and the foot is now in such a condition that it has no spring in it, and he walks upon his heel. The testimony for him is to the effect that he had received no warning or instruction as to how to discharge his duties and did not realize the danger of his foot slipping into the knives; that he had frequently seen the foreman, the

machinist, and the other persons who operated like machines, get out strips in this way. The other machines had a hood under them which served to catch the shavings, and would have prevented his foot from getting into the knives; but the hood had been taken off this machine some time before. The proof for the defendant was to the effect that the hood was only put there to catch the shavings, and that it was taken off because these small strips would often break and clog up the hood, so that it was not practicable to use the hood when they were running these small strips through the planes. The defendant also proved that the knives did not come below the frame on which the machine stood, that the planer was not dangerous, and that it was not practicable to put any other guard there than the frame of the table which came down below the knives.

It is earnestly insisted for the defendant that the court should have instructed the jury peremptorily to find for it. There would be much force in this if the plaintiff had been a grown man; but great care is required of those who employ children about dangerous machinery. The defendant's witnesses testify that they told the boy to feed the strips into the machine, and if anything got wrong with his machine to call the foreman or the machinist. But none of them testify that they told him not to undertake to get the strips out if they broke and hung in the machine. None of them testify that they gave him any instructions as to what he should do in this contingency. It is manifest from all the evidence that the breaking of the strips was a common thing when strips so narrow and so thin were run through the planer, and when the boy was set to working the machine without any instruction as to what he should

do when a thing so common would happen, he would naturally think that he would be expected to do what he saw the others around him do under like circumstances. It is clear from the proof that, when the strips broke and got hung in this way, it was common to go to the rear of the machine, raise the pressure bar, and pull the strips out, and that this would likely be done by a boy by putting his foot against the frame of the machine would be evident to any one. The plaintiff testified that all of them pulled the strips out in this way, and that, while he knew afterwards that there was danger of his getting his foot into the machine, he did not think of it until after he got his foot into it, and did not realize there was any danger of it. In this view of the case, considering the boy's age, his inexperience, and want of knowledge of machinery, the court properly refused to instruct the jury peremptorily to find for the defendant.

It is also insisted that it was a question for the court and not for the jury whether the machine was palpably dangerous, or whether it was practicable to guard it with a hood so as to protect the operator from the knives. The rule with us is, if there is any evidence, the question is for the jury. The knives of a planer are necessarily very dangerous. They will cut anything they come in contact with and will pull the object in with them as they cut it. As these small strips often broke, and the usual way to get them out when they were broken, under the evidence for the plaintiff, was to take them out as he was taking out this strip, there was some evidence that the machine was palpably dangerous, and while there was much evidence for the defendant that it was not practicable to guard this machine with a hood, when

it was cutting these small strips, there is also evidence to the effect that the hood could be taken off very easily and unclogged if it became choked with the broken pieces of the strips; and the evidence was conflicting as to the length of the pieces that would go through. So that we cannot say that there was no conflict of evidence on the question, or that the court should have decided as a matter of law that the machine was not palpably dangerous, or that it was not practicable to guard it with a hood. Where the evidence is conflicting, or where, although there is no conflict of evidence as to the facts, reasonable men may differ as to what conclusion may be drawn from the facts, the question is for the jury.

The court instructed the jury, in substance, as follows: (1) If the plaintiff's foot was caught in the machine and cut by reason of the negligence of the defendant, they should find for him compensation for the injury. (2) If the service assigned to him was dangerous, and such that an inexperienced person would not realize the danger, and the plaintiff did not understand the danger, it was the defendant's duty to instruct him in the use of the machine, and the danger incident thereto, and if it failed to so instruct him, then such failure was negligence on his part. (3) If the machine was not properly guarded and was palpably dangerous to a person operating it in the usual and proper manner, and it was practicable to properly guard it, and make it reasonably safe and permit the reasonable use of the machine for the purpose for which it was intended, then the failure to properly guard it and make it reasonably safe was negligence on the part of the defendant. (4) It was incumbent on the plaintiff to use ordinary care for his own safety, and, if he failed to use such care, the

law was for the defendant, although the defendant was guilty of negligence as defined in instructions 2 and 3.

It is insisted that under instruction 1 the jury were not confined to the negligence alleged in the petition, but might find for the plaintiff for any negligence on the part of the defendant.   But instruction 1 must be read in connection with 2, 3, and 4.   Instructions 2 and 3 define what is "negligence" under No. 1, and by No. 4 the jury were told that they could not find for the plaintiff if he was negligent, although the defendant was negligent as set out in Nos. 2 and 3. The defendant asked a number of instructions, but the substance of them, in so far as they were not peremptory instructions to find for the defendant, was contained in the instructions of the court; and upon the whole case we do not see that the refusal to give any of the instructions asked by the defendant, in so far as they were proper, was prejudicial to the defendant's substantial rights.   The case was clearly and fairly submitted to the jury by the instructions which the court gave, and it is not perceived that additional instructions would have aided the jury in an intelligent decision of the matter.

We cannot say that the verdict of the jury is palpably against the evidence.   The fundamental weakness of the defendant's  case is that this boy was placed in charge of this dangerous machine; that it was common for these strips to break and get hung in the machine; that the getting out of these strips from the machine would require him to take a position near the knives where the slightest mishap might bring him in contact with them; and that no instruction was given to him as to the danger or how to avoid it.   None of the defendant's witnesses testify

Ritter Lumber Co. v. Jordan.

that they instructed the boy not to take the strips out of the machine, and, when they placed him in charge of the machine, they must have anticipated that he would understand that he was expected to do what he saw the other operators of similar machines doing when the strips got hung. It was so common for this trouble to occur that ordinary prudence required that those who placed the boy in charge of the machine should have anticipated the trouble and instructed him as to his duty in that contingency. It is clear from all the evidence that no such instruction as the boy would understand was given him.

The boy could see the knives at the top; he knew the knives were under the frame; he knew that if he got his foot in them they would cut him; the thing he did not realize was the danger of his getting in the knives and the importance of caution on his part to keep out of their reach. It is said that the accident which he met with was one which ordinary care could not have anticipated, and in fact he could not have got his foot into the knives in the way in which he says it happened. But this was a question for the jury. Two juries who saw and heard the witnesses have reached the same conclusion under practically the same evidence. There is perhaps no better way of deciding disputed questions of facts, especially those turning on the inference to be drawn from certain facts, than the judgment of 12 men coming from the different walks of life and putting together their common experiences. They very much better understand such things than we can, and their verdict on such questions should rarely be disturbed.

If the petition was defective—a matter we do not determine—it was cured by the evidence, verdict, and judgment. While the proximate cause of the plain-

tiff's injury was the slipping of his foot, his foot could not have slipped into the machinery if it had been guarded by a hood, and he would not have placed his foot on the machinery if he had understood the danger, and had been instructed how to perform his duties. The initial trouble was not the slipping of the foot, but the failure to instruct him in his duties, if but for this he would  not have placed his foot where it could get into the machine. While the verdict is large, we cannot say that it is so excessive as to justify us in disturbing it;  two juries having reached much the same conclusion.

Judgment affirmed.